UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 06-62

DANNY MAIDEN,                                                    PLAINTIFF,


v.                              **OPINION AND ORDER**


RODNEY HAWKINS, *in his Individual and*
*Official capacities*,
CARROLLTON POLICE DEPARTMENT,
CITY OF CARROLLTON, KENTUCKY, et al.,                DEFENDANTS.

**** **** **** ****

This matter is before the Court on the Defendants' Motion for Summary Judgment (Rec. No. 26). For the following reasons, the motion will be GRANTED as to the Plaintiff's claims against the Carrollton Police Department and the Plaintiff's claims under 42 U.S.C. § 1983. The motion will be DENIED as the Plaintiff's state law claims against Rodney Hawkins and the City of Carrollton and those claims will be remanded to the Carroll Circuit Court.

**I.      FACTS.**

Plaintiff Danny Maiden charges that the Defendant Rodney Hawkins, a police officer for the city of Carrollton, Kentucky, arrested him without probable cause and used excessive force in arresting him. He further charges that the Carrollton Police Department and City of Carrollton failed to employ, properly train, and supervise Hawkins.

1

This matter began at an event called "River Days" in Carrollton, Kentucky. The Plaintiff was at the River Days celebration in downtown Carrollton.  So was his ex-girlfriend who is referred to in the record of this matter as Lori Kincaid although her current name is apparently Lorrie Kincaid Gillock. The sole deposition in the record is that of the Plaintiff.  According to the Plaintiff, he  and Kincaid were involved in an altercation at River Days and, during that altercation, Kincaid hit the Plaintiff above the left eye with her fist. The Plaintiff states the altercation occurred in a field behind Billy Arvin's house, where his truck was parked.  (Rec. No. 27, Pf.'s Dep. at 74).

After Kincaid hit him, the Plaintiff called the police.  Carrollton Police Officer Jeff Gordon was the first to arrive at the scene. When Gordon arrived, the Plaintiff was standing on the road near the field where his truck was parked.  Plaintiff was able to see his truck in the field from where he was standing.  (Rec. No. 27, Pf.'s Dep. at 85). The Plaintiff told Gordon that Kincaid hit him.  Defendant Officer Rodney Hawkins then arrived at the scene. Officer Hawkins was accompanied by a man named Tinks Dews, who is not a law enforcement officer.  Gordon and Hawkins talked for a bit and then Hawkins talked to Kincaid who was standing by her car which was parked behind the Plaintiff's truck in the field.  Officer Robert Stamper then arrived.

The Plaintiff walked to his truck in the field, intending to leave. Officer Stamper then approached the Plaintiff and shined a light on the cut over Plaintiff's eye to take a look at it.  The Plaintiff claims he asked Officer Stamper if the officers were going to arrest Kincaid and that he told Officer Stamper that the officers needed to take her to jail.  Officer Stamper then spoke with Officer Hawkins.  Officer Stamper came back

2

to the Plaintiff and said that Kincaid was not going to press charges.  The Plaintiff asked how Kincaid could press charges.  He then asked Officer Stamper for help pulling his truck out of the field and told Officer Stamper he was going to leave since the officers were "not going to do nothing to her."

Officer Stamper helped the Plaintiff back his truck out of the field.  As the Plaintiff was pulling out of the field, Kincaid started "screaming, hollering," and "cussing" at the Plaintiff. She was standing with Officers Hawkins and Gordon and Dews, still in the field behind her car.  The Plaintiff states he stopped his truck in the field, got out, approached the officers, and asked the officers if they were going to do anything to Kincaid.   The Plaintiff states that he and Officer Hawkins then "had some words."

The Plaintiff states that Officer Hawkins said, "[y]ou need to get in your fucking truck and leave." The Plaintiff states that Officer Stamper then approached and said, "Dan, just go ahead and get in your truck and leave." The Plaintiff states he then got in his truck and left.  The Plaintiff states he was calm and that he was not losing his temper.  He states that he did not assume any type of threatening position.

In an affidavit filed with the Defendants' Motion for Summary Judgment, Kincaid states that she heard Officer Hawkins tell the Plaintiff to get in his truck and leave but that the Plaintiff "got in Officer Hawkins['] face, with his fists clenched and in a position indicating that he was trying to provoke a confrontation."  She states that Officer Hawkins told the Plaintiff to leave and that, if he came back, he would be going to jail.  She states that the Plaintiff then left.

3

The Plaintiff states that, after he left River Days,  he went home, changed clothes, washed up, and put some liquid Band-Aid on his cut and then drove back downtown.  He says he returned within 30 minutes of leaving.  He parked at a parking space on Second and Main.  He then walked back to the party at Arvin's house.  (Rec. No. 27, Pf.'s Dep. at 107).  He states he assumed that Kincaid would have left by this time.  The  Plaintiff states he went to the carport area behind Arvin's house, where 20 to 25  people were gathered.  Kincaid was still there and approached the Plaintiff and began "hollering" and "cussing" at the Plaintiff.  The Plaintiff decided to walk to the Tiki Bar, which was nearby, and stay there until Kincaid left the party.

Kincaid then "went back across the field."  (Rec. No. 27, Pf.'s Dep. at 109). The Plaintiff states that he also started walking across the field, heading to the Tiki Bar. According to Plaintiff, as he walked across the field, Officer Hawkins "and whoever else assisted him" grabbed the Plaintiff from behind by the left harm. (Rec. No. 27, Pf.'s Dep. at 110-11).  The Plaintiff stated that, he did not know who it was at first so he tried to pull away.  Officer Hawkins said, "that's it, you're going to jail."  The Plaintiff asked him what he was talking about.  The Plaintiff states someone then hit him over his left eye at the same spot where Kincaid hit him earlier, reopening the wound.

He states that the blow "dazed" him "pretty good."  The next thing he remembers is, "standing next to the car in handcuffs, bleeding again."  The Plaintiff states he has no idea who hit him in the head over his left eye. (Rec. No. 27, Pf.'s Dep. at 111).  He states he has no idea if it was an open hand, an instrument or a bottle that

4

hit him. (Rec. No. 27, Pf.'s Dep. at 112). He states that Officer Hawkins put the handcuffs on him from behind while the Plaintiff was standing by the cruiser. He states that Dews was also there and that Dews and the Plaintiff were arguing. (Rec. No. 27, Pf.'s Dep. at 117). The Plaintiff states that Officer Hawkins "proceeded to lock the handcuffs down" on the Plaintiff's wrist and then put the Plaintiff in the back of the cruiser.

The Plaintiff states he asked Officer Steve Abbott, who was standing on the passenger side of the cruiser, to loosen the cuffs and that Officer Abbott did so. The Plaintiff states that he had the cuffs on for about five minutes before he asked Officer Abbott to loosen them. The Plaintiff states that all of the windows and doors to the cruiser were shut and he complained to Officer Abbott about the heat. Officer Abbott then opened the passenger door. The Plaintiff states that he sat in the cruiser for about five minutes before he complained to Officer Abbott about the heat.

Kincaid agrees that the Plaintiff returned to Arvin's house about 30 minutes after leaving the field behind the house to go home. However, she states that, when he returned, he was walking across the field approaching her and yelling "fucking bitch" and "whore." She states that Officer Hawkins intervened and that he said "something to the effect of, 'I told you if you came back, you would be going to jail.'" Kincaid states that Officer Hawkins then arrested the Plaintiff, placed him in handcuffs, and walked him to his cruiser. She states that Officer Hawkins did not strike, hit, tackle or use any force in making the arrest and that the Plaintiff did not resist the arrest.

The Plaintiff was charged with disorderly conduct under KRS § 525.060. The

5

arrest occurred at 10:16 p.m. On the uniform citation, Officer Hawkins states that "subject was involved in fight earlier.  Subject was asked to leave and not come back; approx. 15 minutes later, subject arrived back; yelling, argueing [sic] with others." The Plaintiff asserts a claim under 42 U.S.C. § 1983, charging that the Defendants violated his constitutional right to be free from unlawful arrest and excessive force.  He also asserts state law claims of wrongful arrest, intentional infliction of emotional distress, defamation, false imprisonment, and assault and battery. Maiden seeks compensatory and punitive damages. (Rec. No. 1, State Court Complaint).   As a result of a prior Agreed Order of Dismissal, the sole remaining Defendants in this action are Officer Hawkins, in his individual and official capacities, the Carrollton Police Department, and the City of Carrollton.  These Defendants now move for summary judgment.

## II.   STANDARD.

### A.   Standard.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden

6

by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.

7

1994) (quoting *Anderson*, 477 U.S. at 249).  The Court is not to judge the evidence or make findings of fact.  *60 Ivy Street Corp.,* 822 F.2d at 1435-36.  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III.    ANALYSIS.

### A.    The Police Department.

The Carrollton Police Department is not an entity that may be sued.  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)(citing KRS § 95.010(e)).  Accordingly, all of Maiden's claims against the Carrollton Police Department will be dismissed.

### B.    The City's Liability under § 1983.

Cities can be found liable under § 1983 only where a policy or custom of the municipality has caused a violation of the plaintiff's constitutional rights.  *Thompson v. Ashe*, 250 F.3d 399, 409 (6th Cir. 2001)(citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).  Plaintiff claims that he has produced evidence of such a custom or policy in the form of a conversation between the Plaintiff and Officer

8

Gordon that he claims occurred one week after his arrest. The Plaintiff states that Officer Gordon apologized for what occurred on the night of the Plaintiff's arrest and that Officer Gordon said he was unable to stop Officer Hawkins because of a policy of the Carrollton Police Department which prohibits junior officers from questioning senior officers' actions. Officer Gordon allegedly explained to the Plaintiff that Officer Hawkins was a senior officer. According to the Plaintiff, this policy caused the violation of the Plaintiff's rights.

An initial problem is that this conversation is hearsay. Accordingly, the court cannot consider it in ruling on a summary judgment motion. *Shipp v. United States*, 212 Fed. Appx.393, 401-02 (6th Cir. 2006). Further, even if Officer Gordon's statements to the Plaintiff were admissible evidence, a policy or custom that prevents junior officers from questioning the actions of senior officers did not cause any violation of the Plaintiff's constitutional rights. "[A] § 1983 plaintiff must prove that municipal policies and practices directly caused the constitutional violation." *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005). "Municipal liability must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff." *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005). The Plaintiff must "show that the particular injury was incurred *because* of the execution of that policy." *Williams ex re. Hart v. Paint Valley Local School*, 400 F.3d 360, 369(6th Cir. 2005)(quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993)(emphasis added)). "This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Id*.

9

The Plaintiff has not produced any evidence that, assuming his constitutional right to be free from unlawful arrest and excessive force were violated, the violation was caused by the alleged policy that junior officers could not question senior officers. The Plaintiff has not showed that the allegedly unlawful arrest or excessive force were incurred because of the execution of the policy. The Plaintiff has not presented any evidence that the city was aware that senior officers were violating citizens' constitutional rights. There is no direct causal link between a policy that prevented other officers from questioning Officer Hawkins' actions and the allegedly unlawful arrest or excessive force. Accordingly, the Plaintiff's § 1983 claim against the city must be dismissed.

**C.      § 1983 Claims against Officer Hawkins in his Official Capacity.**

The Plaintiff asserts § 1983 claims against Officer Hawkins in his official and individual capacity. It is redundant to allege claims against both a municipality and its officers in their official capacity. A suit against an individual "in his official capacity" is essentially a suit brought directly against the local government unit. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). A § 1983 action should normally be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of the public official. *Id.* at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Ky. v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . ." *Id.* at 167 n.14.

10

Because the Plaintiff has asserted a § 1983 claim against the City, his § 1983 actions against Officer Hawkins in his *official* capacity will be dismissed.

**D.      § 1983 Claims against Officer Hawkins in his Individual Capacity.**

**1)      False Arrest.**

The parties agree that the Plaintiff was arrested for disorderly conduct in the second degree. KRS 525.060 provides that:

> (1) A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
> (a)      Engages in fighting or in violent, tumultuous, or threatening behavior;
>
> (b)      Makes unreasonable noise;
>
> (c)      Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or
>
> (d)      Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

An arrest and prosecution based upon probable cause does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. *Michigan v. DeFillipo*, 443 U.S. 31, 36 (1979)(citations omitted). A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379(6th Cir. 2001). When the constitutionality of an arrest is challenged, "it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been

11

committed." *Beck v. Ohio*, 379 U.S. 89, 96 (1964).  "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *DeFillippo*, 443 U.S. at 36.  Furthermore, "probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest." *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir.1989) (citing *United States v. Calandrella*, 605 F.2d 236, 246 (6th Cir.1979); *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir.1979); *United States v. McManus*, 560 F.2d 747, 750-51 (6th Cir.1977); *United States v. Woods*, 544 F.2d 242, 259-60 (6th Cir.1976)).

According to the Plaintiff's testimony, at the time of the arrest, the officers were aware that the Plaintiff had been involved in an altercation with Kincaid; that Kincaid hit the Plaintiff; that the Plaintiff had phoned the police after that altercation and wanted Kincaid arrested; that, when Kincaid was not arrested even after she screamed, hollered and cussed at  the Plaintiff in front of the officers, the Plaintiff "had some words" with Officer Hawkins; Officer Hawkins and Officer Stamper ordered the Plaintiff to leave the area, which was a field behind Arvin's house; and that,  within 30 minutes, the Plaintiff arrived at Arvin's house where Kincaid was also located.

Whether a reasonably prudent officer in Officer Hawkins' position could believe that the Plaintiff committed a disorderly act is a jury question. A jury could conclude that it was unreasonable for Officer Hawkins to believe that the Plaintiff engaged in fighting or in violent, tumultuous, or threatening behavior.  The Plaintiff

12

testified that he told the officers that Kincaid hit him – not that he hit Kincaid– and that, for that reason, he called the police. The Plaintiff concedes that, after the officers arrived, he "had some words" with Officer Hawkins. However, he also states that he did not threaten the officer or assume a threatening position.

A jury could also conclude, based on the Plaintiff's testimony, that it was unreasonable for Officer Hawkins to believe that the Plaintiff made any unreasonable noise. The Plaintiff does not claim to have yelled or made any other noise that could be perceived as unreasonable. Furthermore, the interaction between the Plaintiff and Officer Hawkins occurred in a party at a public place where many people were located at approximately 10:00 p.m. *Compare Collins v. Commonwealth*, 2004 WL 315035, at * 1 (Ky. App. 2004)(probable cause existed to arrest defendant for making unreasonable noise where defendant called the police demanding that his girlfriend be removed from his trailer and, after the officer arrived, the defendant came out of the trailer and yelled and cursed at his girlfriend to leave the premises, officer twice ordered the defendant inside but the defendant emerged a third time, the altercation occurred at 2:30 a.m. in a residential trailer park, and involved "offensively course language").

Further, the Commentary to the disorderly conduct statute states that it does not apply simply because a private citizen argues with police:

> KRS 525.060 requires "public" alarm. Public is defined in KRS 525.010(2) as that which affects or is likely to affect a substantial group of persons.... For example, a person may not be arrested for disorderly conduct as a result of activity which annoys only the police. The statute is not intended to cover the situation in which a private citizen engages

13

> in argument with the police so long as the argument proceeds without
> offensively coarse language or conduct which intentionally or wantonly
> creates a risk of public disturbance.

A jury could conclude, based on the Plaintiff's testimony,  that only the police were annoyed by the Plaintiff's conduct.

Likewise, a jury could conclude, based on the Plaintiff's testimony, that it was unreasonable for Officer Hawkins to believe that the Plaintiff refused to obey an official order to disperse to maintain public safety in dangerous proximity to a fire, hazard, or other emergency. The commentary to the statute indicates that this section applies to "group dispersal" situations and to "official orders" to disperse by police officers.  Further, the power to order dispersal applies only in "emergency situations." A reasonable jury could conclude that this was not an emergency situation and that the officer had not officially ordered a group dispersal.

Officer Hawkins has never justified his arrest of the Plaintiff based on subsection (d) of the statute and, based upon the Plaintiff's testimony,  a jury could conclude that it would have been unreasonable for Officer Hawkins to believe that the Plaintiff had created a hazardous or physically offensive condition. Accordingly, the Court cannot find that, as a matter of law, Officer Hawkins had probable cause to arrest the Plaintiff.

**2)      Qualified Immunity.**

However, in § 1983 actions against a police officer in his individual capacity, the officer may be entitled to qualified immunity even though he has violated the plaintiff's constitutional rights. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002).

14

The immunity inquiry should acknowledge that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "If the officer's mistake as to what the law requires is reasonable, . . .the officer is entitled to the immunity defense." *Id.*

Thus, even if Officer Hawkins had no probable cause to make the disorderly conduct arrest, he is entitled to qualified immunity if he could have reasonably believed that probable cause existed to arrest the Plaintiff for the charge. *Nails v. Riggs*, 195 Fed. Appx. 303, 311 (6th Cir. 2006)(citing *Hunter v. Bryant,* 502 U.S. 224, 228 (1991) and *Greene v. Reeves,* 80 F.3d 1101, 1107 (6th Cir.1996)). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227.

Assuming the truth of Plaintiff's testimony, Officer Hawkins could reasonably have believed that there was probable cause to arrest the Plaintiff for disorderly conduct. Especially given that Kentucky case law on the disorderly conduct statute is very sparse, *Nails*, 195 Fed. Appx. at 311, the statute can reasonably be interpreted to prohibit the Plaintiff's behavior.

Officer Hawkins knew that the Plaintiff had been engaged in a physical altercation with his ex-girlfriend earlier that day and that Plaintiff was unhappy because she had not been arrested. In fact, he was so unhappy with Kincaid and the officers that he stopped his truck, got out, and had "words with" one of the officers who failed to arrest Kincaid. Further, there is no dispute that two officers, including Hawkins, had ordered the Plaintiff to leave the area and that he, nonetheless returned. The

15

Plaintiff states that he was in the field behind Arvin's house when the officers ordered him to leave and that he returned 30 minutes later to Arvin's house, where Kincaid was located.        It is clear from the Plaintiffs' testimony that the officers ordered the Plaintiff to leave the area because they feared another physical altercation between him and Kincaid and  wanted to diffuse the situation by separating the two. Officer Hawkins would have reasonably presumed that the Plaintiff was still angry with Kincaid when he returned to the party where she was located despite the officers' orders. The officer could have reasonably perceived the Plaintiff's return to the area as threatening to either the officers or Kincaid.

Under these circumstances, Officer Hawkins could have reasonably determined that the Plaintiff was engaging in threatening behavior with the intent to cause public inconvenience or annoyance or alarm. Accordingly, Officer Hawkins is entitled to qualified immunity on the Plaintiff's charge that Officer Hawkins violated his constitutional rights by falsely arresting him.

**3)      Excessive Force.**

Excessive force claims are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The Plaintiff's excessive force claim is based upon three assertions:  his handcuffs were too tight, the police cruiser was too hot, and he was hit over the head during his arrest.

As to the handcuffs and the heat of the cruiser, neither of these constitute excessive force in the context of the Plaintiff's arrest.  The Plaintiff testifies that Officer

16

Abbott immediately loosened the cuffs after the Plaintiff complained about them and that Officer Abbott opened a passenger door immediately after the Plaintiff complained about the heat in the cruiser.

As to the Plaintiff's allegation that he was hit in the head during his arrest, he has not presented any evidence that he was hit by Officer Hawkins. The Plaintiff argues that a jury could infer from the fact that Officer Hawkins arrested him and that the Plaintiff claims he was hit in the head during his arrest, that it must have been Officer Hawkins that did it.

The initial problem, however, is that the Plaintiff has produced very weak evidence that he was hit in the head at all during the arrest. He claims he was struck over his left eye, in the exact same spot that Kincaid had already hit him. Thus, the alleged hit during his arrest did not cause any new wounds. Further, the Plaintiff is unable to describe the "hit" in any detail. Although he was allegedly struck over his eye, he did not see what hit him and has no idea what the object was– whether it was a hand, a bottle, or an instrument of some sort. Even assuming this constitutes sufficient evidence that the Plaintiff was somehow struck during the arrest, not even the Plaintiff himself identifies Officer Hawkins as the individual who hit him. Again, in his deposition, the Plaintiff stated that he has no idea who hit him. This is not sufficient evidence from which a jury could infer that Officer Hawkins hit the Plaintiff at any time during the arrest. Accordingly, the Plaintiffs' excessive force claim must be dismissed.

17

     **E.**    **The State Law Claims.**

The Plaintiff also asserts state law claims of wrongful arrest, intentional infliction of emotional distress, defamation, false imprisonment, and assault and battery. A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Novak v. MetroHealth Medical Center*, – F.3d –, 2007 WL 2807004, at * 8 (Sept. 28, 2007)(quoting *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.1996)). "In cases that have been removed to federal court, however, we have recognized that 'when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed.'" *Id*. (quoting *Thurman v. Daimler Chrysler, Inc.*, 397 F.3d 352, 359 (6th Cir.2004)).

Accordingly, the court will remand the Plaintiff's state law claims to the Carroll Circuit Court.

    **IV.**    **CONCLUSION.**

For these reasons, the court hereby ORDERS the following:

1)    The Defendants' Motion for Summary Judgment (Rec. No. 26) is GRANTED in part and DENIED in part;

2)    the Plaintiff's claims against the Carrollton Police Department are

DISMISSED;

3)      the Plaintiff's claims under 42 U.S.C. § 1983 against the city of Carrollton, Kentucky and Rodney Hawkins in his individual and official capacities are DISMISSED; and

4)      the Plaintiff's state law claims of wrongful arrest, intentional infliction of emotional distress, defamation, false imprisonment, and assault and battery against the City of Carrollton, Kentucky and Rodney Hawkins are REMANDED to the Carroll Circuit Court.

Dated this 3rd day of October, 2007.

**Signed By:**

**_Karen K. Caldwell_**   KKC

**United States District Judge**